394 A.2d 474

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James J. COLEMAN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 16, 1978.

Decided Nov. 18, 1978.

584

Richard Brent Somach, Allentown, for appellant.

William H. Platt, Dist. Atty., Raymond G. Kessler, James B. Martin, Asst. Dist. Attys., Allentown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

In 1971, appellant was convicted of murder in the second degree in connection with the stabbing death of his girlfriend. Motions for new trial and in arrest of judgment were denied. He was sentenced to ten to twenty years' imprisonment. On appeal, judgment of sentence was affirmed by this Court.[1] Subsequently, appellant filed a petition under the Post Conviction Hearing Act requesting a new trial and/or release from custody and discharge. The lower court dismissed the petition and this appeal resulted.

Appellant presents three issues for review: whether the trial court erred in its instructions to the jury regarding the use of intoxication evidence to negate elements of the crime; whether the court abused its discretion by admitting into evidence certain photographs of the victim and of the scene of the crime; and whether appellant was denied effective assistance of counsel.

1. *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387 (1974), *aff'g* 35 Lehigh L.J. 90 (1972), dealing solely with the admissibility of hearsay testimony by the victim's mother relating a telephone conversation with the victim moments before the stabbing.

Appellant's first argument is that since he was on drugs at the time of the killing, the trial court erred in not charging the jury that a finding of intoxication could negate elements of the crime of murder and, therefore, reduce the jury's consideration to a charge of voluntary manslaughter. This argument relies on *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975), held to apply retroactively by *Commonwealth v. Grello*, 464 Pa. 250, 346 A.2d 543 (1975).[2] These cases expanded the use of evidence of voluntary intoxication to negate specific intent in crimes other than first degree murder, and required the judge to give appropriate jury instructions. This expansion was reversed by the General Assembly one year later.[3] Even if we assume, arguendo, that *Graves* applies retroactively to this case because of *Grello*,[4] it would not require a different result. Appellant's argument that the jury should be instructed on the possibility of reducing the crime to voluntary manslaughter, would require the negation of malice, the element distinguishing murder from manslaughter.[5] *Graves* addresses only specific intent. While evidence of alcohol or drug intoxication in a murder case may be used to negate intent

2. While appellant did not raise the issue of jury instructions on direct appeal, this issue was not waived because appellant is arguing for retroactive application of subsequent law, and his PCHA hearing was the first opportunity for him to raise this question.

3. The legislature provided:
   "Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." 18 Pa.C.S.A. § 308 (enacted April 7, 1976).

4. While *Grello* held *Graves* was to be applied retroactively to a case pending direct appeal, it did not decide the question whether *Graves* should apply to a case whose direct appeal has been already decided and which is at the post-conviction relief stage following that direct appeal. The question is further complicated by the statutory abrogation of *Graves* after the direct appeal but prior to resolution of the PCHA proceeding. However, given our resolution of the substantive issue, we need not address the retroactivity question.

5. *See* 18 Pa.C.S.A., §§ 2502, 2503 (Supp.1978).

and thereby reduce the crime to a lesser degree of murder, in no event can it change the *character* of the crime from murder to manslaughter.[6]  *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977).  Appellant's argument thus fails.

■ Appellant next argues that it was error for the court to admit into evidence photographs of the victim and of the scene of the crime.  Having failed to raise this question on direct appeal, appellant has waived the issue.  Act of January 25, 1966, P.L. (1965) 1580 [19 P.S. § 1180–4 (Supp.1978)].

The final question is whether appellant was denied effective assistance of counsel.  We stated in *Commonwealth ex rel. Washington v. Maroney*, "counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests".  427 Pa. 599, 604, 235 A.2d 349, 352 (1967).  We find that appellant received effective assistance of counsel.

■ Appellant's first two claims hereunder allege that his attorneys (two public defenders) were ineffective because they failed to appeal the jury charge on intoxication (discussed prior), and failed to object to the photographic exhibits.  Since the state of the law at the time of trial clearly supported the jury charge on the use of intoxication evidence, it would have been frivolous for counsel to appeal this matter.  The record clearly shows that counsel *did* object to introduction of the photos.  Hence, these ineffective assistance claims are without merit.

■ The third claim of ineffective assistance concerns counsel's failure to appeal the lower court's denial of a motion to suppress evidentiary use of oral statements made to the police by appellant at the time of his arrest.  At the post-conviction hearing, appellant's former counsel testified that he had considered the issue waived because appellant, in taking the witness stand, had testified as to the state-

---

**6.**  "Voluntary manslaughter" is *not* a lesser degree of "murder"; the two crimes constitute separate classes of the offense of "criminal homicide".  *See* 18 Pa.C.S.A. § 2501 (Supp.1978).

ments in question. Counsel also told the court that he had forewarned appellant that such testimony would operate as a waiver. Since appellant's testimony constituted a voluntary and knowing waiver, counsel, quite properly, recognized he was barred from raising the suppression issue on appeal. Thus, we find no ineffective assistance of counsel on this issue.

The final aspect of the ineffectiveness issue involves the failure of counsel to inform appellant of his alleged right to have a court-appointed counsel other than a member of the public defender's staff. There is no such right. While an indigent is entitled to court-appointed counsel at no cost, he cannot insist upon a counsel other than the public defender. *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968). Furthermore, the court will not grant a motion for change of counsel except for substantial reasons. Pa.R.Crim.P. 316(c)(ii); *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976). At the PCHA hearing, where he first raised this question, appellant expressed a vague notion that he might have been able to obtain an attorney with more experience in handling homicide cases. He failed to present any substantial reasons which would have justified reassignment of counsel even if he had made such a request. Nor did he ever express dissatisfaction with his public defender.

Order affirmed.

NIX, J., filed a concurring opinion in which POMEROY, J., joined.

ROBERTS and MANDERINO, JJ., concurred in the result.

NIX, Justice, concurring.

Appellant in this collateral proceeding under the Post Conviction Hearing Act, 19 P.S. 1180–1 *et seq.* (Supp.1978–79) attempts to raise a trial error which was not raised during the direct appeal process. *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387 (1974). Specifically, appellant argues that the trial judge erred in not charging the

jury that evidence of intoxication could serve to negate both specific intent *and the malice requirement of murder*, such that murder of the second degree[1] would be reduced to voluntary manslaughter. Ignoring the obvious waiver of this issue, 19 P.S. 1180–4(b), the majority reaches the merits and in so doing confuses the law in the area.

The majority states that "this issue was not waived because appellant is arguing for retroactive application of subsequent law." (p. 589, n.2.) However, a waiver is not avoided simply because a party *argues* that the issue has not been waived, rather it must be established that the claim of no waiver is in fact sustainable. In this case it clearly was not. The claim that the argument rests upon a new principle of law, not recognized at the time of the direct appeal in this case, assumes that our decision in *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975) changed the law in the area of felonious homicide. This assumption is incorrect. In *Graves*, we reiterated the prior law that where the charge was felonious homicide, evidence of voluntary intoxication may be introduced to negate the presence of a specific intent to kill. *See Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971); *Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1970); *Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947); *Commonwealth v. McCausland*, 348 Pa. 275, 35 A.2d 70 (1944). At no point in our *Graves* decision was it suggested, either expressly or implicitly, that voluntary intoxication, by itself, was sufficient to lower a homicide to voluntary manslaughter. In analyzing the cases relating to the effect of intoxication in homicide cases, we stated in *Graves* :

"These decisions were primarily addressed to the problem of whether evidence of intoxication should be permitted to reduce the charge to voluntary manslaughter. Each of these cases, faced with the issue, recognized that intoxica-

1. At the time of the commission of the homicide in the instant case, "all other kinds of murder" constituted murder of the second degree. 18 Pa.C.S.A. § 2502(b) (1973). In 1974 the legislature reclassified such homicides as murder of the third degree. *Id.* § 2502(c) (Supp. 1978–79).

tion was not a basis for excuse or mitigation but was germane to the issue of the existence of premeditation and deliberation. While it is true that they concluded that the evidence was not to be used to reduce the crime to voluntary manslaughter, and concededly in some instances mention a distinction between a lesser degree and another grade of crime, a careful reading of these cases indicates that the crucial consideration for their conclusion was that the fact of intoxication was irrelevant to the question of the absence or presence of legal provocation and passion. *See Commonwealth v. Ingram, supra. We agree that to incorporate one's state of sobriety into the test of sufficient provocation would be completely improper. To follow this approach would be tantamount to accepting intoxication as a mitigating factor."* (emphasis added; footnote omitted)

*Commonwealth v. Graves, supra,* 461 Pa. at 125, 334 A.2d at 664–65.

*See also Commonwealth v. England,* 474 Pa. 1, 19–20, 375 A.2d 1292 (1977).

With the determination that the contention of appellant was available on direct appeal, it is obvious that the question was not preserved for review and should not be considered further by this Court.[2] To the contrary, the majority has elected to raise questions (without deciding) as to the continued vitality of *Graves* and the extent of its retroactive application. In my judgment this approach is unwarranted and jurisprudentially unsound.

I would affirm the ruling of the Post Conviction Hearing Court on this issue on the basis that the issue had been waived.

POMEROY, J., joins this concurring opinion.

**2.** It has been a firm policy of this Court that we do not discuss the merits where the question has been waived. *See, e. g., Commonwealth v. Faison,* 437 Pa. 432, 442–3, 264 A.2d 394, 399 (1970).